UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRUCE PARKER,

       Plaintiff,

v.

HEIDI WASHINGTON,
KENNETH MCKEE, WILLIS
CHAPMAN, GEORGE
STEPHENSON, and
KRISTOPHER STEECE,

       Defendants.

_____/

Case No. 4:20-cv-11413
District Judge Matthew F. Leitman
Magistrate Judge Kimberly G. Altman

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS (ECF No. 54)[1]

### I.      Introduction

This is a prisoner civil rights case under 42 U.S.C. § 1983.  On May 14, 2020, plaintiff Bruce Parker, proceeding *pro se*, filed a complaint alleging that defendants Heidi Washington, Kenneth McKee, Willis Chapman, George Stephenson, and Kristopher Steece violated his constitutional rights.  (ECF No. 1).

---

[1] Upon review of the parties' papers, the undersigned deems this matter appropriate for decision without oral argument.  *See* Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

1

Under 28 U.S.C. § 636(b)(1), all pretrial matters were referred to the undersigned on May 12, 2021.  (ECF No. 65).

On April 21, 2021, Defendants filed a motion to dismiss under Rule 12(b)(6) for failure to state a claim.  (ECF No. 54).  Defendants filed a motion to stay discovery on the same day, and a motion to stay motion practice on May 10, 2021. (ECF Nos. 55, 64).  The latter motions were granted, staying discovery and motion practice until the resolution of all pending dispositive motions.  (ECF No. 74).  The undersigned now considers Defendants' pending motion to dismiss.  For the reasons that follow, the undersigned recommends that Defendants' motion be **GRANTED IN PART AND DENIED IN PART**.  Parker has failed to state a claim against Washington, McKee, and Steece.  However, his claims against Chapman and Stephenson state plausible claims for relief under the Eighth Amendment and are therefore not subject to dismissal.

## II.     Background

Parker alleges that due to the deliberate indifference of Defendants and the conditions at the Macomb Correctional Facility (MRF) in which he was housed, he became infected with the COVID-19 virus on April 1, 2020.  (ECF No. 1, PageID.1-2).  Specifically, he alleges that throughout early to mid-March 2020, prisoners were being allowed to co-mingle and social distancing was not being exercised despite prisoners becoming ill and suffering cold sweats, diarrhea, and

headaches.  (*Id*., PageID.5).  He filed a grievance against the five Defendants for their failure to implement protective protocols against COVID-19, and later wrote and mailed letters to the Defendants requesting that procedures and safeguards be implemented.  (*Id*., PageID.6-7).

On March 27, 2020, Parker was awoken by another prisoner who was coughing and wheezing in his cell.  (*Id*., PageID.8).  The prisoner informed Parker that he was just moved to Parker's cell because his former cellmate was suspected of having COVID-19.  (*Id*.).  Parker informed an officer that he was at high risk due to respiratory issues and could not be housed with his new cellmate; the officer contacted Steece, who informed the officer that the new cellmate had tested negative for the virus.  (*Id*.).  Parker was then given the option to remain in his cell or be sent to segregation for disobeying a direct order.  (*Id*.).  He chose the latter.  (*Id*.).

The next day, Parker was taken to health care experiencing chronic chest pains and breathing complications.  (*Id*., PageID.8-9).  He notes that this was also the day protective masks were issued to all prisoners and staff.  (*Id*., PageID.9).  On March 31, 2020, Parker suffered a severe asthma attack, was given breathing treatment that was ineffectual, and was tested for COVID-19.  (*Id*.).  The following day he was informed that he had tested positive.  (*Id*.).

On April 2, 2020, Parker suffered dizziness, "non-stop chest pains and shortness of breath" due to the illness, was coughing up blood, and alleges he was not properly treated for his symptoms due to his restraints. (*Id*.). He further alleges that his former sick cellmate tested positive for COVID-19 that day, and that Parker was informed of this on April 3rd. (*Id*.).

Parker alleges systemic issues with MRF's early handling of COVID-19 as well. The complaint states that he as well as 60 other COVID-19 positive prisoners lacked access to cleaning supplies, were bunked within inches of one another, and had to use the same toilets and sinks as one another, which exacerbated Parker's preexisting conditions. (*Id*., PageID.9-10). Parker states that from April 15, 2020 to the present, COVID-19 positive prisoners are being double-bunked with other prisoners, both positive and negative, based on inaccurate information regarding the possibility of reinfection. (*Id*., PageID.10). Parker admits to having been offered a COVID-19 vaccine and declining to take it. (ECF No. 82, PageID.971-972).

### III.   Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc*., 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action ..."). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by pro se parties, " 'courts should not have to guess at the nature of the claim asserted.' " *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Moreover, "courts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.... [N]either may the Court 'conjure up unpled allegations[.]' "

*Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009)

(Ludington, J., adopting report and recommendation of Binder, M.J.).

Finally, in ruling on a motion to dismiss, the Court may consider the

complaint as well as (1) documents referenced in the pleadings and central to

plaintiff's claims, (2) matters of which a court may properly take notice, (3) public

documents, and (4) letter decisions of government agencies may be appended to

a motion to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308

(2007). *See also Greenberg v. Life Ins. Co. of Va.*, 177 F.3d 507, 514 (6th Cir.

1999); *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).

## IV.   Analysis

Defendants argue that (1) Parker does not sufficiently allege the personal

involvement of Washington or McKee in a constitutional violation; (2) the

allegations against Steece do not rise to the level of deliberate indifference; (3)

Parker fails to state a claim against all defendants due to the reasonableness of the

Michigan Department of Corrections' (MDOC) response to COVID-19 at MRF;

and (4) that all defendants are entitled to qualified immunity.

### A.  Respondeat Superior Claims Against Washington and McKee

#### 1.  General

"Under § 1983, there is no *respondeat superior* or vicarious liability."

*Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013).  "When suing an

6

individual actor ... for constitutional violations under § 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging, implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Id.* "To prove acquiescence, it is not enough to show that the actor merely failed to act against misconduct of which he was aware." *Id.*

"If no constitutional violation by the individual defendants is established, the municipal defendants cannot be held liable under § 1983." *Watkins v. City of Battle Creek*, 273 F.3d 682, 687 (6th Cir. 2001).

## 2.  Application

Parker sues all defendants, including Washington and McKee, in their individual capacities for monetary damages.  (ECF No. 1, PageID.4-5, 11).  The references to Washington and McKee in the complaint are limited to receiving grievances and letters from Parker related to MRF's COVID-19 protocols.  (*Id.*, PageID.5-8).  Defendants are correct that "[a] defendant's involvement in the denial of an administrative grievance is insufficient to show personal involvement in the alleged unconstitutional conduct as required to state a claim under § 1983. *O'Brien v. Michigan Dep't of Corr.*, 592 F. App'x 338, 341 (6th Cir. 2014) (citing *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)).  Because Parker has not sued Washington or McKee in their official capacities or sought injunctive relief in

the complaint, no analysis of Defendants' municipal liability is necessary. *See*

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Parker responds that Defendants have mischaracterized his claims, stating

that Washington is "involved daily in the identification, planning, creation, and

implementation of all MDOC policies" and that McKee was "responsible for

establishing COVID-19 isolation areas" which, properly established, would have

prevented a COVID-19 positive prisoner from being placed in Parker's cell. (ECF

No. 70, PageID.882-883). However, these allegations are absent from the

complaint. Furthermore, Parker has since filed a motion for an amended

complaint, removing Washington and McKee as defendants.[2]

Based on the allegations contained within the four corners of the complaint,

the undersigned finds that Parker has failed to state a claim against defendants

Washington and McKee, and RECOMMENDS that claims against them be

DISMISSED.

### B. Deliberate Indifference Claim Against Steece

### 1. General

Under the Eighth Amendment, "prison officials must ensure that inmates

receive adequate food, clothing, shelter, and medical care, and must 'take

---

[2] Parker's motion to amend and other pending motions he has filed will be the subject of a separate order.

reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

The Supreme Court has set forth two requirements to show a violation of the Eighth Amendment—one objective and one subjective. "First, the deprivation alleged must be, objectively, 'sufficiently serious,' ... a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities[.]' " *Farmer*, 511 U.S. at 834 (citations omitted). "[A] medical need is objectively serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Richmond v. Huq*, 885 F.3d 928, 938 (6th Cir. 2018) (quotation marks and citations omitted).

Second, "a prison official must have a sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834.

> The subjective component requires a showing that the official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety. [T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. An express intent to inflict unnecessary pain is not required. Rather, obduracy and wantonness are required to make a showing of deliberate indifference. [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

9

*Richmond*, 885 F.3d at 939 (internal quotation marks and citations omitted).  "[D]eliberate indifference [lays] somewhere between the poles of negligence at one end and purpose or knowledge at the other[.]" *Farmer*, 511 U.S. at 836.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id*.

## 2.  Application

Parker has not alleged facts that would satisfy the subjective requirements of showing a deliberate indifference to a serious medical need by Steece.  Defendants are correct that Steece was, at most, allegedly negligent in his handling of the cellmate that was housed with Parker.  There is no allegation that the other prisoner was positive for COVID-19 at the time he was moved to Parker's cell or that Steece had knowledge to that effect.  In fact, Parker alleges that he was housed with the ill prisoner on March 27, 2020, but that the prisoner was not found to be positive for COVID-19 until April 2, 2020.  (ECF No. 1, PageID.8-9).

Parker argues in his response that the risk of transferring a prisoner from a COVID-19 positive prisoner's cell to Parker's was "obvious," citing *Farmer*. (ECF No. 70, PageID.884).  But the thrust of *Farmer*, in establishing the two-pronged test for deliberate indifference, is that it is not enough to allege obviousness; the risk must be known to satisfy the subjective element.  *See*

*Farmer*, 511 U.S. at 841-842 ("For these reasons, we cannot accept petitioner's argument that … a prison official who was unaware of a substantial risk of harm to an inmate may nevertheless be held liable under the Eighth Amendment if the risk was obvious and a reasonable prison official would have noticed it.").  Parker also cites *Cameron v. Bouchard*, 815 F. App'x 978, 987 (6th Cir. 2020) as an example of deliberate indifference pertaining to COVID-19 and inmate transfers, but there, petitioners were denied a preliminary injunction in part because they "produced no evidence that any inmate who had not tested positive for COVID-19 was transferred to a cell containing inmates who had tested positive for COVID-19." Of course, Parker need not produce evidence at this stage, but as explained above, he has not alleged the transfer of a prisoner who "tested positive for COVID-19" to his cell.  That prisoner did not test positive until days after being transferred to Parker's cell, and Parker has failed to state a *known* risk that Steece unreasonably disregarded.  The undersigned RECOMMENDS that Parker's claims against Steece be dismissed.

### C.  The MDOC Response to COVID-19

#### 1.  General

Defendants argue that Chapman and Stephenson must be dismissed due to the Sixth Circuit's ruling in *Wilson v. Williams*, 961 F.3d 829 (6th Cir. 2020), in

which the Federal Bureau of Prison's (BOP) response to COVID-19 at the Elton

Federal Correctional Institution in Ohio was upheld as reasonable.[3]

In *Wilson*, federal prisoners filed a petition under to obtain release from

custody to limit their exposure to the COVID-19 virus. *Wilson*, 961 F.3d at 832-

33. They sought to represent all current and future inmates, including a subclass of

inmates who—because of age and/or certain medical conditions—were particularly

vulnerable to complications, including death, if they contracted COVID-19. *Id*.

The district court's preliminary injunction was vacated on appeal by the Sixth

Circuit, who found that the BOP "responded reasonably" to the risks presented by

COVID-19, rendering the subjective component of the deliberate indifference

inquiry unsatisfied. *Id*. at 839-840. The BOP's actions to control the virus

included:

> [I]mplement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.

---

[3] Defendants argue that this reasoning applies to all Defendants. However, the undersigned focuses on Parker's claim against Chapman and Stephenson because the undersigned recommends dismissal of Washington, McKee, and Steece for the reasons stated above.

*Id.* at 840-41.

## 2.  Application

To invoke *Wilson*, Defendants here must demonstrate a similarity to the facts in *Wilson* and MDOC's response to the COVID-19 pandemic at the MRF. *See, e.g., Cameron v. Bouchard*, 815 F. App'x at 986 ("Given the similarity of the BOP's response in *Wilson* and Defendants' response here, *Wilson* controls the outcome of this case[.]").  Defendants attempt to do so by relying on affidavits Washington and Chapman filed in other cases, including *Abrams, et al v. Chapman, et al*, No. 2:20-cv-11053 (E.D. Mich. 2020), as well as a "supplemental affidavit" submitted by Chapman for this case.  (ECF No. 54, PageID.681-689, 698-701).  In a footnote, Defendants claim that "it is appropriate for this Court to consider affidavits at this stage of litigation," because "they are matters of public record[.]"  (*Id.*, PageID.681).

Defendants are mistaken.  They cite no authority for the proposition that an affidavit, generally, can be considered on a motion to dismiss as a matter of public record, and the undersigned has found none.  An affidavit that is not referenced in the pleadings nor integral to the plaintiff's claims may not be considered in deciding a motion to dismiss.  *See Adams Respiratory Therapeutics, Inc. v. Perrigo Co.*, 255 F.R.D. 443, 446–47 (W.D. Mich. 2009) ("[I]f the Court considers an affidavit attached to a motion to dismiss, the Court must convert the motion into

13

one for summary judgment."); *Rudd v. City of Norton Shores*, No. 1:18-CV-124, 2018 WL 3751399, at *4 (W.D. Mich. Aug. 8, 2018), *aff'd in part, rev'd in part and remanded sub nom. Rudd v. City of Norton Shores, Michigan*, 977 F.3d 503 (6th Cir. 2020) ("[Defendant's] suggestion that a court may consider an affidavit that merely 'clarifies' facts alleged in a complaint on a Rule 12(b)(6) motion would obliterate the distinction between a Rule 12(b)(6) motion to dismiss and a Rule 56 motion for summary judgment.  Thus, the Court will not consider [the defendant's] affidavit."); *Gregory v. CitiMortgage, Inc.*, 890 F. Supp. 2d 791, 796 (E.D. Mich. 2012) ("[B]ecause the affidavit is neither referenced to in the pleadings nor integral to the plaintiff's claims, the Court will not consider this affidavit in deciding the defendants' motion to dismiss."); *Burgess v. Lee Acceptance Corp.*, No. 08-13713, 2008 WL 5111905, at *2 (E.D. Mich. Dec. 4, 2008); *Ritchie v. Coldwater Cmty. Sch.*, No. 1:11-CV-530, 2012 WL 2862037, at *3 (W.D. Mich. July 11, 2012); *Rau v. Calvert Invs., LLC*, No. 19-10822, 2019 WL 6339817, at *6 (E.D. Mich. Nov. 27, 2019); *but see Morris v. Washington*, No. 20-CV-13268, 2021 WL 3612295, at *4 (E.D. Mich. July 15, 2021), *report and recommendation adopted,* No. 20-13268, 2021 WL 3603384 (E.D. Mich. Aug. 13, 2021) (relying on affidavits from *Abrams* in ruling on a motion to dismiss, without discussion).

Confronted with affidavit evidence in a motion to dismiss, a court may either convert the motion to one for summary judgment under Rule 56, or decline to consider the evidence. *See, e.g., Adams*, *Rudd*, *Gregory*. Here, it would be improper to consider the evidence. Parker was not on notice that he would be defending a motion for summary judgment, and crucially, Defendants requested a stay on discovery until resolution of their motion to dismiss. (ECF No. 55). It would be unfair to expect Parker to respond to Defendants' evidence without the opportunity for discovery.

Without the ability to introduce outside evidence at this stage, Defendants' reliance on *Wilson* in a motion to dismiss is misplaced. As one court explained:

> The named Defendants rely heavily on *Wilson v. Williams*, which held, in reversing the grant of a preliminary injunction, that medically vulnerable inmates were not likely to succeed on the merits of their Eighth Amendment claim against prison officials for their allegedly inadequate response to COVID-19, because the officials acted reasonably in responding the pandemic. 961 F.3d 829, 841–844 (6th Cir. 2020). Certain courts within this circuit have cited *Wilson* in dismissing complaints brought against prison officials alleging inadequate COVID-19 responses. *See, e.g.*, *Brooks v. Washington*, No. 2:21-cv-19, 2021 WL 2024706, at *12 (W.D. Mich. May 21, 2021). While this Court agrees with the view that *Wilson* raises considerable doubt as to whether Plaintiffs will ultimately be able to succeed on the merits of their Eighth Amendment claims, the Court finds that Defendants' *Wilson*-based argument is misplaced at the motion to dismiss stage. Unlike the preliminary injunction standard applied in *Wilson*, which assesses the likelihood of a party's success on the merits, the Rule 12(b)(6) dismissal standard focuses on the sufficiency of a party's pleadings. Defendants' *Wilson*-based argument is, therefore, not germane to the present analysis.

*Rouse v. Washington*, No. 20-CV-11409, 2021 WL 2434196, at *8 (E.D. Mich. June 15, 2021).

Defendants cite three cases relying on *Wilson* to argue that dismissal at the motion to dismiss stage is proper: *Blackburn v. Whitmer*, No. 20-12579, 2021 WL 248686 (E.D. Mich. Jan. 26, 2021), *Van Diver v. Nagy*, No. 20-11340, 2020 WL 7225975 (E.D. Mich. Dec. 8, 2020), and *McMurry v. Brown*, No. 2:20-CV-58, 2020 WL 3118567 (W.D. Mich. June 12, 2020). Each is distinguishable, notably because none of these cases involved a motion to dismiss. *Blackburn* is a ruling on a temporary restraining order and plaintiff's motion for default judgment, and *Van Diver* is a ruling on a preliminary injunction and plaintiff's petition for a writ of habeas corpus. For the TRO and injunction, the courts in those cases were tasked to consider the evidence presented by the parties, as the court was in *Wilson*. In *McMurry*, the court sua sponte dismissed the complaint under 28 U.S.C. § 1915(a)(3), noting that "Plaintiff did not allege that he has come into contact with any individual who has COVID-19." 2020 WL 3118567, at *10. It further found that "he has failed to allege facts showing that Defendants' handling of the COVID-19 crisis violated his Eighth Amendment rights."

Here, like the plaintiff in *Rouse*, Parker has sufficiently *alleged* that some defendants "have acted unreasonably in responding to the pandemic." *Rouse*, 2021 WL 2434196, at *8. For instance, he alleged that social distancing and face mask

guidelines were neglected despite Executive Orders from Governor Gretchen Whitmer requiring them, that he was denied access to his inhalers, that he was not treated after having contracted COVID-19, and that prisoners were denied access to cleaning supplies. (ECF No. 1, PageID.6-10). Presumably, Parker holds Chapman at least partly responsible for these alleged violations, as Chapman was the prison's warden at the time of these allegations. Further, Parker specifically alleges that Chapman ignored his concerns regarding COVID-19 on March 15, 2020, and that Chapman and Stephenson ignored him again on March 19, 2020, with Stephenson responding "Parker, what are you worried for? You're a big guy, you can take it." (*Id*., PageID.5-6).[4]

Defendants do not argue that these allegations are insufficient, instead relying on evidence to counter Parker's claims. However, at this stage, the Court must consider the allegations of the complaint as true. *Keys v. Humana, Inc*., 684 F.3d at 608. While it may be that Parker's Eighth Amendment claims against Chapman and Stephenson will not survive summary judgment, that question is for another day. Therefore, the undersigned RECOMMENDS that Defendants' motion to dismiss on these grounds be DENIED.

### D. Qualified Immunity

---

[4] Defendants note in their motion that Chapman is no longer the warden at MRF, and that Stephenson is currently the acting MRF warden.

Finally, Defendants argue that they are entitled to qualified immunity, as they have not violated clearly established law.  Section 1983 claims are subject to the affirmative defense of qualified immunity.  *Regets v. City of Plymouth*, 568 F. App'x 380, 386 (6th Cir. 2014).  "Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights."  *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016).  "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (cleaned up).  "To be clearly established, a legal principle must have a sufficiently clear foundation in then-existing precedent."  *D.C. v. Wesby*, 138 S. Ct. 577, 589, 199 L. Ed. 2d 453 (2018).  There does not need to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft*, 563 U.S. at 741, (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"The Supreme Court has repeatedly stressed that courts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Moderwell v. Cuyahoga Cty., Ohio*, 997 F.3d

18

653, 660 (6th Cir. May 12, 2021) (internal quotations omitted).  "But there can be

the rare obvious case, where the unlawfulness of the officer's conduct is

sufficiently clear even though existing precedent does not address similar

circumstances."  *Id*. (internal quotations omitted) ; *see also* Joanna C.

Schwartz, *Qualified Immunity and Federalism All the Way Down*, 109 Geo. L.J.

305, 351 (2020) ("The Court's decision in *Taylor* sends the signal to lower courts

that they can deny qualified immunity without a prior case on point."); Lawrence

Rosenthal, *Defending Qualified Immunity*, 72 S.C. L. Rev. 547, 593 & n.193

(2020) ("More recently, however, the Court has stressed that on egregious facts,

qualified immunity should be denied regardless whether there are factually similar

precedents.").

Defendants contend that Parker "cannot cite a case showing that MDOC

Defendants violated clearly established law."  (ECF No. 54, PageID.703).  They

elaborate that as recommendations from health officials shifted throughout the

COVID-19 pandemic, the MDOC adapted and implemented the recommended

practices.  (*Id*.).  These practices were implemented and enforced by defendants

Chapman and Stephenson.  (*Id*., PageID.703-704).

Parker counters that cases like *Wilson* and *Campbell*, while not finding

liability on behalf of their defendants, have outlined what may be a constitutional

violation in the face of COVID-19 in prisons.  (ECF No. 70, PageID.886).  Further,

he argues that the Supreme Court in *Hutto v. Finney*, 437 U.S. 678, 682–83 (1978)

provides support for clearly established law that inmates being housed with others

suffering from "infectious diseases such as hepatitis and venereal disease" can

constitute deliberate indifference.  Parker also cites *Helling v. McKinney*, 509 U.S.

25, 33 (1993), where a claimant alleging exposure to environmental tobacco smoke

within a prison was found to have stated a claim.  Defendants argue that these

cases are too broad, and at too high a level of generality, to provide clearly

established law.

The Sixth Circuit has recently reiterated that although "qualified immunity is

a threshold question to be resolved at the earliest point possible, that point is

usually summary judgment and not dismissal under Rule 12."  *Moderwell*, 997

F.3d at 660 (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)).

"The reasoning for our general preference is straightforward: 'Absent any factual

development beyond the allegations in a complaint, a court cannot fairly tell

whether a case is "obvious" or "squarely governed" by precedent, which prevents

us from determining whether the facts of this case parallel a prior decision or not'

for purposes of determining whether a right is clearly established."  *Guertin v.*

*State*, 912 F.3d 907, 917 (6th Cir. 2019) (quoting *Evans-Marshall v. Bd. of Educ.*

*of Tipp City Exempted Vill. Sch. Dist.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton,

J., concurring)).  Therefore, "it is generally inappropriate for a district court to

grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley*, 779 F.3d at 433.

The undersigned recommends following *Moderwell* and the Sixth Circuit authorities cited therein. Without the benefit of factual development of the case from both sides, it would be hasty to say that there is no "obvious" or "squarely governed" violation here. Further, Parker has cited Supreme Court guidance that could be interpreted to reach these issues if the facts of this matter align with those claims. For that reason, the undersigned RECOMMENDS that Parker's claim not be dismissed on the basis of qualified immunity.

## V.     Conclusion

For the reasons stated above, the undersigned recommends that Defendants' motion to dismiss be **GRANTED IN PART AND DENIED IN PART**. Parker's claims against defendants Washington, McKee, and Steece should be dismissed, but his claims against Chapman and Stephenson should continue.

Dated: November 2, 2021
Detroit, Michigan

s/Kimberly G. Altman
KIMBERLY G. ALTMAN
United States Magistrate Judge

## NOTICE TO PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation. Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).

21

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 2, 2021.

22

s/Marie E. Verlinde
MARIE E. VERLINDE
Case Manager